CASE NO. 17-23490-CIV-ALTONAGA/Goodman

**BRIAN GAVIRIA**,

Plaintiff,

v.

**FRANCISCO GUERRA**, *et al.*,

Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Francisco Guerra, Jennifer Alvarez, Mayor Carlos A. Gimenez, and Miami-Dade County's Motion to Dismiss Counts II, IV, and VIII of Plaintiff's Amended Complaint [ECF No. 26], filed February 9, 2018. Plaintiff, Brian Gaviria, filed a Response [ECF No. 29], to which Defendants filed a Reply [ECF No. 31]. The Court has carefully considered the parties' written submissions, the record, and applicable law.

## I.    BACKGROUND

This action arises out of an encounter between Gaviria and police officers Guerra and Alvarez at Gaviria's home. (*See generally* Amended Complaint [ECF No. 25]). In the early morning hours of April 21, 2016, Guerra and Alvarez arrived at Gaviria's home to investigate a noise complaint. (*See id.* ¶ 15). Gaviria and his brother met the two officers at the front door of the home, and Gaviria questioned the officers as to their purpose for stopping by. (*See id.* ¶¶ 16–17). Gaviria and the officers had a heated exchange of words. (*See id.* ¶ 17).

At some point, Guerra and Alvarez entered the home, even though neither officer had a search or arrest warrant authorizing entry, and Gaviria never granted them consent to enter his

home. (*See id.* ¶¶ 18–20). Gaviria began to video record the encounter and continued to question them as to their purpose and authority for entry. (*See id.* ¶¶ 18, 21). Guerra stated he did not need a "judicial order" to enter the home and instructed Gaviria to produce identification. (*Id.* ¶ 22 (internal quotation marks omitted)).

Shortly thereafter, without provocation or threat of harm by Gaviria or his brother, Guerra shot Gaviria with a Taser or other electronic-control device. (*See id.* ¶ 23). Gaviria's body was given three different discharges of an electric current. (*See id.*). Guerra and Alvarez then used "unnecessary physical force" to restrain and handcuff Gaviria. (*Id.* ¶ 24). Guerra punched Gaviria as he was on the ground; while Alvarez kicked Gaviria's midsection, placed her boot on his chest and neck, and forcibly placed Gaviria in handcuffs with Guerra's assistance. (*See id.* ¶¶ 25–26). Gaviria did not resist the officers with violence or otherwise. (*See id.* ¶ 27).

Once questioned by other Miami-Dade police officers about the incident, Guerra and Alvarez misrepresented numerous factual details, and falsely stated: when they arrived at Gaviria's home they overheard loud noise emanating from inside; Gaviria instantly became irate when he came into contact with the officers; Gaviria appeared to be under the influence of alcohol; Gaviria had bloodshot eyes, slurred speech, and an odor of alcohol; Gaviria was belligerent and pushed Guerra onto his back; and Gaviria mounted Guerra necessitating Alvarez to strike Gaviria's head. (*See id.* ¶ 28). Alvarez and Guerra "colluded and/or conspired together to fabricate their own version of events" prior to their respective depositions on August 29, 2016 and October 10, 2016 as part of the state court criminal case brought against Gaviria. (*Id.* ¶ 29

(citing Deposition of Jennifer Alvarez [ECF No. 30-1]; Deposition of Francisco Guerra [ECF No. 30-2][1])).

In contrast to Guerra and Alvarez's testimony, police officer Manuel Machado, while transporting Gaviria to jail, observed: Gaviria was calm; he was cooperative; he did not resist in any way; he did not seem unbalanced; and he did not have any odor of alcohol. (*See id.* ¶ 30). Additionally, Alvarez and Guerra presented conflicting accounts in their sworn testimony: Guerra claims Gaviria pushed him into Alvarez, but Alvarez denies that happening; Guerra claims Gaviria had a criminal violation at the time he attempted to take him into custody, but Alvarez denies that; Guerra claims Gaviria used violence toward him prior to attempting to take him into custody, but Alvarez denies that; and Guerra claims Gaviria invited him into the home, but Alvarez said there was no invitation. (*See id.* ¶ 31).

Guerra and Alvarez "colluded and/or conspired to unlawfully gain access to Gaviria[] and his brother's cellular phones to locate the video recordings to destroy them." (*Id.* ¶ 32 (alteration added)). "Other officers were involved in the attempt to unlawfully acquire access to Gaviria's cell phone." (*Id.*).

Detective Alain Rodriguez brought the phone to Joel Tavio, a digital forensics examiner with the Miami-Dade Police Department, to download the videos from the phone. (*See id.* ¶ 33). Gaviria gave Guerra, Alvarez, and other MDPD officers the passcode to his phone after the officers falsely told him he was "legally required to provide the passcode" and stated they needed to obtain the videos on the phone "quickly." (*Id.* (internal quotation marks omitted)). Rodriguez claimed there was consent for the search of the phone, but Gaviria asserts it was "obtained under fraudulent pretenses." (*Id.*). Once Guerra and Alvarez accessed the phone

---

[1] The deposition transcripts were intended to be attached to the Amended Complaint, but "were mistakenly not included on eFiling." (Notice of Filing [ECF No. 30]). The Court treats the transcripts as incorporated into the Amended Complaint for purpose of ruling on this Motion.

using Gaviria's fraudulently obtained passcode, they deleted the video footage taken by Gaviria. (*See id.* ¶ 45). Gaviria did not discover the officers' destruction of evidence until he was released from custody, but he was able to retrieve the videos because they were uploaded to iCloud prior to their deletion by Guerra and Alvarez. (*See id.*).

The MDPD had a "pattern, policy and custom" to "fraudulently attempt to obtain consent, and to quickly act upon the consent before it is uncovered." (*Id.* ¶ 34). Tavio indicated consent cases were a "priority" in the MDPD office because the consent may later be revoked. (*Id.*).

Guerra and Alvarez also attempted to alter the crime scene to create the appearance of a struggle with Gaviria. (*See id.* ¶ 35). As part of an effort to cover up their violations of Gaviria's civil rights, they took alcoholic beverage containers and threw them around Gaviria's living room, damaged a piece of electronic equipment on the wall, and broke Gaviria's coffee table. (*See id.*).

According to Gaviria, the County "routinely fails to punish officers who commit clear civil rights violations as part of its longstanding widespread deliberately indifferent custom, habit, practice and/or policy of granting officers a 'free-pass' for improper conduct." (*Id.* ¶ 36). Guerra and Alvarez's actions violating Gaviria's civil rights occurred "pursuant to the preexisting and ongoing deliberately indifferent official custom, practice, decision, policy, training, and supervision of the . . . County acting under the color of state law." (*Id.* ¶ 37 (alteration added)). The County has encouraged, tolerated, ratified, and acquiesced in a dangerous environment of police brutality by: failing to conduct sufficient training or supervision with respect to the constitutional limitations on the use of force; failing to adequately punish unconstitutional uses of force; tolerating the use of unconstitutional force; failing to properly or

neutrally investigate citizen complaints of excessive force; and tolerating, encouraging, and permitting collusive statements by involved officers in such situations. (*See id.* ¶ 38).

The County and the MDPD have a longstanding and widespread custom, habit, practice, or policy to find no fault with police conduct "as long as any story is given by police, regardless of how incredible." (*Id.* ¶ 40). The Division of Internal Affairs routinely ignores complaints of excessive force and collusion between acting officers (*see id.* ¶ 41), and fails to pursue inconsistencies in officer or witness accounts (*see id.* ¶ 42). The MDPD's failure to thoroughly investigate claims leads to a heightened risk MDPD officers will use force excessively, as there is no danger of retribution or punishment. (*See id.* ¶ 43). Plaintiff alleges "[u]pon information and belief . . . other members of the public have been hurt by at least some of the same officers who have been the subject of citizen complaints both prior to April 21, 2016 and thereafter." (*Id.* ¶ 44 (alterations added)).

The County was a "policymaker[]" for the MDPD (*id.* ¶ 75 (alteration added)); and "was charged with the responsibility of adopting and implementing rules, policies, practices, customs and procedures for the proper and efficient maintenance, supervision, and control of MDPD Officers" (*id.* ¶ 76). The County had a duty to "exercise reasonable care in hiring, training, and retaining safe and competent employees." (*Id.* ¶ 77). The County "failed to adequately train or otherwise supervise and direct" the MDPD and its officers concerning the use of excessive force in police encounters (*id.* ¶ 78); even though it was "on notice" of a history of widespread abuse and of a well-settled policy, practice, and custom of MDPD officers committing "extreme and reckless actions" (*id.* ¶ 79). Although both Guerra and Alvarez had "reports of excessive use of force incidents," the County ratified and condoned their unlawful behavior, resulting in Gaviria's subsequent injuries. (*Id.* ¶¶ 83–84).

The Amended Complaint contains eight counts: a claim under 42 U.S.C. section 1983 for excessive force in violation of the Fourth and Fourteenth Amendments against Guerra and Alvarez ("Count I"); a claim under 42 U.S.C. sections 1981 and 1983 for deliberately indifferent policies, practices, customs, training and supervision in violation of the Fourth and Fourteenth Amendments against the County ("Count II"); a claim under section 1983 for unlawful entry and search of a home in violation of the Fourth Amendment against Guerra and Alvarez ("Count III"); a claim under section 1983 for unlawful entry and search of a cellular phone in violation of the Fourth Amendment against Guerra and Alvarez ("Count IV"); a claim under section 1983 for false arrest and false imprisonment in violation of the Fourth and Fourteenth Amendments against Guerra and Alvarez ("Count V"); a malicious prosecution claim against Guerra and Alvarez ("Count VI"); a battery claim against Guerra and Alvarez ("Count VII"); and a battery claim against the County ("Count VIII"). (*See generally id.*).

Defendants move to dismiss Counts II, IV, and VIII under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims for relief. (*See generally* Mot.). Defendants argue Count II should be dismissed because Plaintiff fails to identify an official or unofficial County policy linked to his injuries, and fails to allege a final policymaker for the County. (*See id.* 3–6). Defendants argue Count IV fails to state a claim for illegal search of Plaintiff's cell phone against Alvarez and Guerra because Plaintiff admits he consented to the search and fails to properly allege the consent was obtained fraudulently, and because Plaintiff does not allege Alvarez and Guerra actually possessed his cell phone. (*See id.* 6–7). Finally, Defendants contend Count VIII should be dismissed because Plaintiff fails to state a battery claim against the County, as the County is not liable for malicious tortious acts by its police officers under Florida law. (*See id.* 7–8).

## II.    LEGAL STANDARDS

Rule 8(a) requires a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (alteration added) (quoting *Twombly*, 550 U.S. at 570). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556). To meet this plausibility standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).

When a plaintiff alleges fraud or mistake, he must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff must allege: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Holguin v. Celebrity Cruises, Inc.*, No. 10-20215-CIV, 2010 WL 1837808, at *2 (S.D. Fla. May 4, 2010) (internal quotation marks omitted) (quoting

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). The purpose of Rule 9(b)'s particularity requirement is to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and fraudulent behavior." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (citations and internal quotation marks omitted; alterations added). "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (footnote call number omitted); *see also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006) (holding plaintiffs must plead non-fraud claims with particularity when those claims are based on defendants' fraudulent conduct).

In addressing a Rule 12(b)(6) motion, the Court considers the allegations of the complaint, exhibits attached or incorporated by reference, and exhibits attached to the motion to dismiss if they are central to Plaintiff's claim and undisputed. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 295 F.R.D. 540, 546 n.4 (S.D. Fla. 2013).

### III. ANALYSIS

#### A. Count II

Defendants argue Plaintiff fails to state a claim against the County in Count II because he fails to allege his constitutional violations were caused by an officially promulgated County policy or an unofficial custom or practice of the County shown through the repeated acts of a final policymaker. (*See* Mot. 3–6).

### 1.    Policy or Custom

Ordinarily, a county may only be sued under section 1983 when a plaintiff's injuries are caused by an official policy of the county. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thus, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citation omitted). A plaintiff "has two methods by which to establish a county's policy: either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citations omitted). "Under either avenue, a plaintiff . . . must identify those officials who speak with final policymaking authority for [the county] concerning the act alleged to have caused the particular constitutional violation in issue." *Id.* at 1330 (alterations added).

Plaintiff does not rest his claim on an officially promulgated policy that led to his injuries; instead he alleges the County has an unofficial custom or practice of failing to investigate – and thereby condoning – excessive force on civilians committed by MDPD officers. (*See* Am. Compl. ¶¶ 38–44, 80–81; *see also* Resp. 3–4). However, Plaintiff does not sufficiently identify an official with final policymaking authority whose "repeated acts" demonstrate the existence of the alleged unofficial custom. *Grech*, 335 F.3d at 1329.

Confusingly, Plaintiff alleges the County "was . . . [a] policymaker[] for [the] MDPD" (Am. Compl. ¶ 75 (alterations added)), but also states the County "both exercised and delegated its municipal final decision making power to the Director of [the] MDPD and others" (*id.* ¶ 7 (alteration added)). According to Plaintiff, these allegations are sufficient because he identifies the Director of the MDPD as the responsible policymaker. (*See* Resp. 3). The Court disagrees.

Numerous cases in this District have held the director of the MDPD is not a final policymaker for Miami-Dade County for purposes of supporting a *Monell* claim because "[p]olicymaking authority is not conferred by the mere delegation of authority to a subordinate to exercise discretion." *Buzzi v. Gomez*, 62 F. Supp. 2d 1344, 1359 (S.D. Fla. 1999) (alteration added) (citing *Mandel v. Doe*, 888 F.2d 783, 792 (11th Cir. 1989)); *see also Wilson ex rel. Estate of Wilson v. Miami-Dade Cty.*, No. 04-23250-CIV, 2005 WL 3597737, at *8–9 (S.D. Fla. Sept. 19, 2005) (the plaintiff did not sufficiently allege a policymaker for Miami-Dade County where the plaintiff identified the head of the MDPD as the County's policymaker because "final policymaking authority for Miami-Dade County rests with the Board of County Commissioners or the County Manager"); *Diaz-Martinez v. Miami-Dade Cty.*, No. 07-20914-CIV, 2009 WL 2970468, at *12 (S.D. Fla. Sept. 10, 2009) ("Plaintiff alleges in his Third Amended Complaint that at all times relevant to this action, 'the final policymakers for the MDPD included, without limitation, the Police Chief and the Mayor of the County.' . . . [T]hese allegations are incorrect and fail to correctly identify the final policy makers for the County." (alterations added; citations and footnote call number omitted)). As Plaintiff has failed to plausibly allege a final policymaker for the County, he cannot bring a *Monell* claim premised on an unofficial custom.

Moreover, Plaintiff's allegation of an unofficial custom has a further deficiency. "To establish the existence of a custom, the plaintiff must show a longstanding and widespread practice." *Marantes v. Miami-Dade Cty.*, 649 F. App'x 665, 672 (11th Cir. 2016) (internal quotation marks omitted) (quoting *Craig v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir. 2011)). Thus, "[a] single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality." *Craig*, 643 F.3d at 1311 (alteration added). Rather, "considerably more proof than [a] single incident [is]

necessary." *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) (alterations added); *see also Marantes*, 649 F. App'x at 672.

Plaintiff fails to allege a widespread practice of excessive force by MDPD officers as evidenced by multiple prior incidents. Plaintiff's only references to incidents of excessive force separate from the incident at issue are vague allegations Guerra and Alvarez "ha[ve] a history of reports of excessive use of force incidents causing injuries and violations of citizens' rights, of which Miami-Dade County was aware," and "ha[ve] a propensity for misconduct, including excessive use of force against members of the public." (Am. Compl. ¶¶ 83–84 (alterations added)).

These allegations fall well short of demonstrating the use of excessive force by MDPD officers "constitute[s] the sort of occurrence that is obvious, flagrant, rampant and of continued duration that would establish a causal connection between actions of the supervising official and the alleged constitutional violation." *Whitaker v. Miami-Dade Cty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015) (alteration added; internal quotation marks omitted) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1990)) (dismissing *Monell* claim where the plaintiffs alleged MDPD officers had been involved in four shootings during a nine-month span two years prior to the plaintiff having been shot by police, but had not "offered any description of a prior incident involving a relevant constitutional violation"); *see also Marantes*, 649 F. App'x at 673 ("[E]ven broadly construing the amended complaint, [the plaintiff] has cited only two incidents of alleged excessive force — his arrest and a homicide involving the same set of officers who arrested him. These allegations do not show that the County had a longstanding and widespread practice of encouraging excessive force." (alterations added; internal quotation marks and citations

omitted)). Thus, even had Plaintiff plausibly alleged a final policymaker for the County, his *Monell* claim premised on an unofficial custom of excessive force would still be insufficient.

### 2. Failure to Train

In lieu of alleging a policy or custom, a plaintiff may invoke the narrower "failure to train" theory of liability, although the circumstances giving rise to such liability are quite limited: a plaintiff must allege facts demonstrating "deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (alteration added; footnote call number omitted). To show "deliberate indifference," a plaintiff must allege facts showing "the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citations omitted).

The Eleventh Circuit "repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Id.* at 1351 (footnote call number omitted). Indeed, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (alteration added). Additionally, the deficient training of one officer is not sufficient to meet this standard; rather the deficiency must be widespread and closely related to the plaintiff's injury. *See City of Canton*, 489 U.S. at 390–91.

A claim of deliberate indifference premised on a failure to train or supervise usually requires a showing of "a widespread pattern of similar constitutional violations by untrained employees." *Mingo v. City of Mobile*, 592 F. App'x 793, 799 (11th Cir. 2014). "Prior incidents . . . must involve facts substantially similar to those at hand in order to be relevant to a deliberate-

indifference claim." *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013) (alteration added) (citing *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005); *Gold*, 151 F.3d at 1351).

Here — although Plaintiff fails to address the issue in his Response (*see generally* Resp.) — the Amended Complaint appears to assert the County is liable for failure to train or supervise MDPD officers (*see, e.g.*, Am. Compl. ¶ 78 ("Miami-Dade County, with deliberate indifference as to the possibility of Gaviria's injuries, failed to adequately train or otherwise supervise and direct MDPD and its Officers concerning the rights of the citizens they encounter in their duties.")). Still, as mentioned, Plaintiff fails to adequately allege prior widespread abuses similar to the actions taken by Guerra and Alvarez during the incident in question. For the same reason the Amended Complaint fails to adequately allege a pattern of abuse sufficient to show an unofficial custom, Plaintiff fails to allege facts sufficient to demonstrate a pattern of violations that establish deliberate indifference to a need to train or supervise. *See Whitaker*, 126 F. Supp. 3d at 1324.

While "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train," *Connick*, 563 U.S. at 62 (alteration added) (quoting *Bd. of Cty. Comm'rs*, 520 U.S. at 409), "the Supreme Court has 'hypothesized' that 'in a narrow range of circumstances,' a municipality may be liable under [s]ection 1983 when a single incident is the 'obvious' consequence of a failure to provide specific training," *Whitaker*, 126 F. Supp. 3d at 1324 (alteration added) (quoting *Connick*, 563 U.S. at 62).

Neither the Supreme Court nor the Eleventh Circuit has ever applied the single-incident liability exception. The Fifth Circuit has upheld a jury verdict based on this theory of liability,

*see Brown v. Bryan Cty.*, 219 F.3d 450, 465 (5th Cir. 2000), but only where the evidence at trial "showed the County to have a policy of providing *no* training itself for its regular officers and reserve deputies," *id.* at 455 (emphasis added), and "the jury reasonably could have found that [the police officer who harmed the plaintiff] remained, essentially, unsupervised," *id.* at 463 (alteration added). Later Fifth Circuit cases have limited *Bryan County* to its unique facts. *See Whitaker*, 126 F. Supp. 3d at 1326 (citing cases).

Plaintiff does not come close to alleging facts similar to those shown at trial in *Bryan County* and accordingly is not entitled to proceed under a theory of single-incident liability. While Plaintiff alleges the County "failed to adequately train or otherwise supervise and direct MDPD and its Officers" (Am. Compl. ¶ 78), and "[f]ail[ed] to conduct sufficient training or supervision with respect to the constitutional limitations on the use of force" (*id.* ¶ 38(a) (alterations added); *see also id.* ¶ 39), as well as that Guerra and Alvarez were "not counseled on correction" of their prior uses of excessive force on citizens (*id.* ¶¶ 83–84), the Amended Complaint does not state the County provided *no* training to its police officers or that Guerra and Alvarez were essentially unsupervised (*see generally id.*). Single-incident liability does not apply to Plaintiff's claims as stated. *See Chappell v. City of Clanton*, No. 2:17-CV-370, 2017 WL 4079721, at *7 (M.D. Ala. Sept. 14, 2017) (dismissing claim for municipal liability premised on failure to train where the plaintiff pled only the "legal conclusion[]" the county "did not adequately train its police officers to employ safe, reasonable and necessary techniques;" alleged "no actual facts suggesting that there was an obvious but unmet need for training;" and did "little, if anything, to tie the constitutional deprivation alleged . . . to a specific lack of training" (alterations added; footnote call number, internal quotation marks, and citation omitted)).

As Plaintiff has failed to sufficiently allege an official or unofficial policy of excessive force or a failure to train, the *Monell* claim against the County is dismissed.

### B.    Count IV

Defendants contend Plaintiff's claim against Guerra and Alvarez for the illegal search of his cell phone must be dismissed because he fails to allege the officers actually possessed the cell phone, and because he fails to sufficiently plead with particularity he was fraudulently induced into turning the phone over for inspection.  (*See* Mot. 6–7).

To Defendants' first point, Plaintiff correctly argues he does, in fact, allege Guerra and Alvarez possessed his cell phone.  (*See* Resp. 5).  Specifically, in Paragraph 45 of the Amended Complaint, Plaintiff states "Alvarez and Guerra fraudulently obtained access to Gaviria's phone by instructing him that he had to turn over the passcode for the phone" and "[o]nce they had access, they deleted the video footage taken by Gaviria."  (Am. Compl. ¶ 45 (alteration added)). In Paragraph 32, Plaintiff elaborates Guerra and Alvarez, as well as "[o]ther officers" were involved in the attempt to access Plaintiff's cell phone and delete his video footage.  (*Id.* ¶ 32 (alteration added)).

In the Reply, Defendants state this allegation in the Amended Complaint is contradicted by Plaintiff's testimony, given at his criminal trial.  (*See* Reply 2–4).[2]  At his criminal trial, when

---

[2] Defendants attach an excerpt of the transcript of Plaintiff's testimony to their Reply.  (*See* Reply, Ex. A, Gaviria Trial Transcript [ECF No. 31]).  While the Court is ordinarily bound by the four corners of the complaint and its attachments in ruling on a Rule 12(b)(6) motion to dismiss, it may consider extraneous exhibits if they are central to Plaintiff's claim and their authenticity is undisputed.  *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  Plaintiff's criminal case is central to his Amended Complaint, as he summarizes Alvarez and Guerra's deposition testimony given in that case (*see* Am. Compl. ¶¶ 29–31), incorporates those transcripts as exhibits to the Amended Complaint (*see* Alvarez Dep. Tr.; Guerra Dep. Tr.), and the authenticity of the Trial Transcript is not reasonably in dispute.  The Court thus finds it appropriate to take the fact Gaviria made these statements at his criminal trial into consideration in ruling on the Motion to Dismiss.  *See U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811–12 & n.4 (11th Cir. 2015) (the district court properly considered "the transcript of a hearing in another case involving a defendant clinic in state court" on a Rule 12(b)(6) motion because "[c]ourts may take judicial notice of publicly filed documents, such as those in state court litigation" (alteration added; citations omitted));

asked whether Alvarez or Guerra saw him on his phone in the police cruiser, Gaviria testified "[e]verything . . . was so calm when they took me to the car that they never searched me. They never searched anything[] that I had . . . with me." (Gaviria Trial Tr. 60:16–18 (alterations added)). Gaviria stated he handed his cell phone over voluntarily (*see id.* 60:19–21, 61:1–3), to Detective Rodriguez (*see id.* 61:4–6).

The Court disagrees with Defendants' characterization of this testimony as squarely contrary to the Amended Complaint's allegations. It is indeed possible for Gaviria to have handed his phone to Detective Rodriguez, as he testified, and also for Alvarez and Guerra to have defrauded Gaviria into giving them his password, accessed the phone, and deleted its footage — as presently alleged. Similarly, Guerra and Alvarez's failure to search Gaviria in the police cruiser does not mean the two officers did not at some other point handle or search the cell phone. As the Amended Complaint has not been directly contradicted, the Court credits its allegations as true in deciding the Motion, and will not dismiss Count IV on the basis Plaintiff fails to allege Guerra and Alvarez actually possessed the cell phone. *See Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) ("In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

---

*Rossy v. Lupkin*, No. 3:13-CV-396-J-34PDB, 2017 WL 2172062, at *2–3 (M.D. Fla. May 17, 2017) (considering documents from the plaintiff's state court criminal proceedings attached to a motion dismiss because "they are public records not capable of reasonable dispute" and "the prior state court proceedings are central to [the plaintiff's] claims" (alteration added; citations omitted)); *but see Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1370 (S.D. Fla. 2014) (declining to take judicial notice of "copies of statements purportedly given before Congress" because they "are not adjudicative facts" (internal quotation marks omitted) (quoting *Randolph v. J.M. Smucker Co.*, No. 13-80581-CIV, 2014 WL 1018007, at *2 (S.D. Fla. Mar. 14, 2014))); *F.D.I.C. v. Aultman*, No. 2:13-CV-58-FTM-38UAM, 2013 WL 3357854, at *5 (M.D. Fla. July 3, 2013) (declining to take judicial notice of statements made in criminal cases "for the truth of the matters asserted therein").

Defendants next briefly argue the Count fails because Plaintiff's allegation he was defrauded into voluntarily turning over his phone does not satisfy Rule 9(b)'s heightened pleading requirement. (*See* Mot. 7). Defendants do not explain in their Motion or Reply how Plaintiff's allegations are deficient; instead they merely state in conclusory fashion Plaintiff "must satisfy Rule 9's heightened pleading requirement" and "[t]his, Plaintiff fails to do." (*Id.* (alteration added)).

Nevertheless, Plaintiff states his allegations comply with Rule 9(b) and directs the Court to the relevant paragraphs of the Amended Complaint describing how Guerra and Alvarez, in conjunction with other officers, fraudulently induced Gaviria into giving them access to his cell phone. (*See* Resp. 5–6 (citing Am. Compl. ¶¶ 32–34, 45)). Taken together, the allegations in the Amended Complaint set forth: on April 21, 2016 (*see* Am. Compl. 1), while Gaviria was in custody (*see id.* ¶ 45), Guerra and Alvarez falsely stated to Gaviria "he was legally required to provide the passcode to the phone" in order "to obtain the videos on Gaviria's phone" (*id.* ¶ 33); and "[o]nce they had access, they deleted the video footage taken by Gaviria" (*id.* ¶ 45 (alteration added)). These allegations — presenting the who, what, when ,where, and why — meet Rule 9(b)'s pleading standard, *see Holguin*, 2010 WL 1837808, at *2, and with their scant briefing of this issue, Defendants fail to meet their burden of persuading the Court otherwise. Count IV accordingly survives.

## C.     Count VIII

Defendants seek dismissal of Plaintiff's cause of action for battery against the County because the Amended Complaint describes malicious conduct by Guerra and Alvarez, and thus the County is immune from suit under Florida law. (*See* Mot. 7–8). Pursuant to Florida's limited sovereign immunity waiver, found in Section 768.28, Florida Statutes:

> The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). Defendants point out "Plaintiff's allegations that the Officers 'viciously attacked Gaviria, who was not resisting the officers' efforts with . . . resistance' . . . and that Plaintiff was tased, punched, and kicked with absolutely no 'provocation or threat of harm' by Plaintiff . . . can only be read to be alleging malicious conduct." (Mot. 7 (alterations added) (quoting Am. Compl. ¶ 27; then quoting *id.* ¶ 23)). According to Defendants, these allegations bely Plaintiff's assertion in his pleading Guerra and Alvarez acted without a "malicious purpose" (Am. Compl. ¶ 131), because "[a]s a matter of common sense, a vicious attack by a police officer on someone who has not provoked or threatened the officer in any way is, *ipso facto*, 'malicious' (Reply 4 (alteration added); *see also* Mot. 7). Defendants contend since the officers acted maliciously, the County — a subdivision of the state — is immune from suit. (*See* Mot. 7–8).

According to Plaintiff, Count VIII is "a negligence count" pled in the alternative. (Resp. 6). Plaintiff states the allegations may support a finding Guerra and Alvarez acted negligently — not maliciously — and the Court should allow alternative theories of section 1983 claims and negligence claims to proceed at the motion to dismiss stage. (*See id.* 6–7). Plaintiff cites two cases — *Reyes v. City of Miami Beach*, No. 07-22680-CIV, 2007 WL 4199606 (S.D. Fla. Nov. 26, 2007), and *Simmons v. RIC Bradshaw*, No. 14-80425-CIV, 2014 WL 11456548 (S.D. Fla. Dec. 31, 2014) — for the proposition he can proceed under alternate theories of liability (*see* Resp. 6–7).

First, the Court notes Plaintiff does not allege Guerra and Alvarez's use of force on him was negligent; rather Plaintiff describes Guerra and Alvarez's actions as "intentional[], but not in bad faith or with malicious purpose." (Am. Compl. ¶ 131 (alteration added)). Second, both *Simmons* and *Reyes* are distinguishable.

In *Simmons*, the court denied summary judgment and allowed a state law battery claim to proceed against both a deputy sheriff who shot an individual and the county sheriff in his official capacity, even though the deputy, but not the sheriff, would be liable if the deputy's actions were willful and wanton, while the sheriff, but not the deputy, would be liable if the deputy's actions were not willful and wanton. 2014 WL 11456548, at *20. Finding "genuine issues of material fact" existed, the court noted:

> If the jury were to credit [the plaintiff's] version of events, it could very well find that [the deputy] acted in bad faith and . . . [the sheriff] would be immune. . . . But if the jury were to instead credit [the deputy's] version of events, it could find that his actions were not undertaken in bad faith.

*Id.* (alterations added).

Unlike *Simmons*, which addressed a motion for summary judgment, the Court accepts Plaintiff's allegations as true. *See Dusek*, 832 F.3d at 1246. Plaintiff specifically alleges Guerra and Alvarez "misrepresent[ed]" the factual details of the incident to other MDPD officers (*see* Am. Compl. ¶ 28 (alteration added)), and their respective versions of events as stated in their depositions in Gaviria's criminal case were "fabricate[d]" (*id.* ¶ 29 (alteration added)) and "contradictory" (*id.* ¶ 31; *see also id.* ¶ 30).

The Court cannot discount Guerra and Alvarez's testimony as false — as the Amended Complaint alleges the testimony is — and at the same time rely on the testimony to support an alternative theory Guerra and Alvarez did not act with malice. In contrast to *Simmons*, there is

only one account — Plaintiff's — the Court may credit as true to determine whether the alternate theories of liability can proceed, not two. *Simmons* is accordingly inapposite.

*Reyes* is also distinguishable. In that case, the court declined to dismiss claims for assault and battery against the City of Miami Beach pursuant to Section 768.28, Florida Statutes, where the plaintiffs' "factual allegations could support a cause of action against the City for assault and battery based on the excessive, but not malicious, actions of its employees, such that the question should not be taken away from the jury" at the motion to dismiss stage. 2007 WL 4199606, at *3. The plaintiffs in that case alleged:

> the Officers approached them in a park to address whether their dog was on a leash, used excessive force in the course of stopping them and handcuffing and arresting Reyes, and ultimately issued both Plaintiffs a citation (which they knew to be false) for "dog running at large, no leash."

*Id.* The court reasoned:

> Accepting Plaintiffs' account as true and drawing all reasonable inferences in their favor . . . the Court cannot say that such allegations could *only* describe acts outside the scope of the Officers' employment or acts "committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

*Id.* (alteration added; emphasis in original).

Finally, the court stated the alleged conduct of the officers did not "rise to the same level of severity" as that of the officers in *Dukes v. Miami-Dade Cty.*, No. 05-22665-CIV (S.D. Fla. July 5, 2006) — where the court held allegations of officers shooting a citizen in the chest, slamming him on the ground, and stomping on him could only suggest malice or bad faith. *Id.* at *4. Nor was it similar to the officers' actions in *Sanchez v. Miami-Dade Cty.*, No. 06-21717-CIV, 2007 WL 1746190 (S.D. Fla. Mar. 28, 2007), where the court held the County was immune from suit where the plaintiff alleged the officers handcuffed the plaintiff, instigated a fight between him and another citizen, and abandoned the plaintiff far from home. *See id.* at *4.

In contrast to *Reyes*, the allegations concerning Guerra and Alvarez's conduct "can only equate with the kind of intentional, malicious misconduct by a state employee that does not give rise to municipal liability under Florida's waiver of sovereign immunity statute." *Max Junior Printemps v. Miami Dade Cty.*, No. 1:17-CV-20268, 2017 WL 2555631, at *3 (S.D. Fla. June 9, 2017) (internal quotation marks and citations omitted). Gaviria alleges "without provocation or threat of harm by Gaviria or his brother, Guerra shot Gaviria with a Taser" or other electronic-control device, giving him three different discharges of an electric current (Am. Compl. ¶ 23); "Guerra struck Gaviria repeatedly with a closed fist when he was on the ground" (*id.* ¶ 26); and "Guerra and Alvarez viciously attacked Gaviria, who was not resisting the officers' efforts with . . . violence" (*id.* ¶ 27 (alteration added)). Drawing all reasonable inferences in Plaintiff's favor, the Court cannot construe these allegations as describing anything less than acts "committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Sta. § 768.28(9)(a); *see also Gregory v. Miami-Dade Cty.*, No. 16-17093, 2017 WL 5483158, at *13 (11th Cir. Nov. 15, 2017) ("Accepting as true the facts alleged in the complaint . . . . no version of the facts pled in this particular case support a claim that Officer Perez acted without wanton and willful disregard of Gregory's rights. Sovereign immunity therefore attaches to the claims against Miami-Dade." (alteration added)). The County is therefore immune from suit for the battery claim, and so the claim is dismissed.

## IV.    CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 26]** is **GRANTED in part** and **DENIED in part**. Counts II and VIII of the Amended Complaint [ECF No. 25] are **DISMISSED**. The remaining causes of action proceed.

**DONE AND ORDERED** in Miami, Florida, this 19th day of April, 2018.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record